Chief Judge Ricardo S. Martinez

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR21-133 RSM |
| Plaintiff, | |
| v. | **PLEA AGREEMENT** |
| MATTHEW RUHMANN SLATER, | |
| Defendant. | |

The United States, through United States Attorney Nicholas W. Brown and Assistant United States Attorney Sok Tea Jiang of the Western District of Washington and Defendant Matthew Ruhmann Slater and Defendant's attorney, Jennifer Horwitz, enter into the following Plea Agreement, pursuant to Federal Rule of Criminal Procedure 11(c).

1.    **The Charge**. Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enters a plea of guilty to each of the following charge contained in the Indictment.

a.    Interstate Threats, as charged in Count Four, in violation of Title 18, United States Code, Section 875(c).

By entering a plea of guilty, Defendant hereby waives all objections to the form of the charging document. Defendant further understands that before entering any guilty plea, Defendant will be placed under oath. Any statement given by Defendant under oath may be used by the United States in a prosecution for perjury or false statement.

2.     **Elements of the Offense**. The elements of the offense to which Defendant is pleading guilty are as follows:

a.     The elements of Interstate Threats, as charged in Count Four, are as follows: First, Defendant knowingly sent a message in interstate commerce. Second, the message contained a true threat to injure the person of another; that is, Defendant intended that the message be taken as a true threat.

3.     **The Penalties**. Defendant understands that the statutory penalties applicable to the offense to which Defendant is pleading guilty are as follows:

a.     For the offense of Interstate Threats, as charged in Count Four: A maximum term of imprisonment of up to five years, a fine of up to $250,000, a period of supervision following release from prison of up to three years, and a mandatory special assessment of $100 dollars. If a probationary sentence is imposed, the probation period can be for up to five years.

Defendant understands that supervised release is a period of time following imprisonment during which Defendant will be subject to certain restrictive conditions and requirements. Defendant further understands that, if supervised release is imposed and Defendant violates one or more of the conditions or requirements, Defendant could be returned to prison for all or part of the term of supervised release that was originally imposed. This could result in Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

Defendant understands that as a part of any sentence, in addition to any term of imprisonment and/or fine that is imposed, the Court may order Defendant to pay restitution to any victim of the offense, as required by law.

Plea Agreement - 2
*United States v. Slater*, CR21-133 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Defendant further understands that the consequences of pleading guilty may include the forfeiture of certain property, either as a part of the sentence imposed by the Court, or as a result of civil judicial or administrative process.

Defendant agrees that any monetary penalty the Court imposes, including the special assessment, fine, costs, or restitution, is due and payable immediately and further agrees to submit a completed Financial Disclosure Statement as requested by the United States Attorney's Office.

Defendant understands that, if pleading guilty to a felony drug offense, Defendant will become ineligible for certain food stamp and Social Security benefits as directed by Title 21, United States Code, Section 862a.

4.      **Immigration Consequences**. Defendant recognizes that pleading guilty may have consequences with respect to Defendant's immigration status if Defendant is not a citizen of the United States. Under federal law, a broad range of crimes are grounds for removal, and some offenses make removal from the United States presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, and Defendant understands that no one, including Defendant's attorney and the Court, can predict with certainty the effect of a guilty plea on immigration status. Defendant nevertheless affirms that Defendant wants to plead guilty regardless of any immigration consequences that Defendant's guilty plea may entail, even if the consequence is Defendant's mandatory removal from the United States.

5.      **Rights Waived by Pleading Guilty.** Defendant understands that by pleading guilty, Defendant knowingly and voluntarily waives the following rights:

   a.      The right to plead not guilty and to persist in a plea of not guilty;

   b.      The right to a speedy and public trial before a jury of Defendant's peers;

   c.      The right to the effective assistance of counsel at trial, including, if Defendant could not afford an attorney, the right to have the Court appoint one for Defendant;

d.      The right to be presumed innocent until guilt has been established beyond a reasonable doubt at trial;

e.      The right to confront and cross-examine witnesses against Defendant at trial;

f.      The right to compel or subpoena witnesses to appear on Defendant's behalf at trial;

g.      The right to testify or to remain silent at trial, at which trial such silence could not be used against Defendant; and

h.      The right to appeal a finding of guilt or any pretrial rulings.

6.      **United States Sentencing Guidelines**. Defendant understands and acknowledges that the Court must consider the sentencing range calculated under the United States Sentencing Guidelines and possible departures under the Sentencing Guidelines together with the other factors set forth in Title 18, United States Code, Section 3553(a), including: (1) the nature and circumstances of the offense(s); (2) the history and characteristics of Defendant; (3) the need for the sentence to reflect the seriousness of the offense(s), to promote respect for the law, and to provide just punishment for the offense(s); (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of Defendant; (6) the need to provide Defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records. Accordingly, Defendant understands and acknowledges that:

a.      The Court will determine Defendant's Sentencing Guidelines range at the time of sentencing;

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1      b.     After consideration of the Sentencing Guidelines and the factors in

2  18 U.S.C. § 3553(a), the Court may impose any sentence authorized by law, up to the

3  maximum term authorized by law;

4      c.     The Court is not bound by any recommendation regarding the

5  sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines

6  range offered by the parties or the United States Probation Department, or by any

7  stipulations or agreements between the parties in this Plea Agreement; and

8      d.     Defendant may not withdraw a guilty plea solely because of the

9  sentence imposed by the Court.

10     7.    **Ultimate Sentence**. Defendant acknowledges that no one has promised or

11  guaranteed what sentence the Court will impose.

12     8.    **Statement of Facts**. The parties agree on the following facts. Defendant

13  admits Defendant is guilty of the charged offense:

14      a.     In September 2019, Defendant Matthew Ruhmann Slater was

15  employed as a pharmacist with the U.S. Department of Veterans Affairs ("VA"). During

16  that month, Slater was arrested twice for driving under the influence. In January 2020,

17  Slater was placed on administrative leave due to these arrests.

18      b.     Beginning in April 2020, Slater made a series of disturbing posts on

19  Facebook, including pictures of the mass shooter who murdered 32 people at Virginia

20  Tech University in 2007. Slater also complained on Facebook that certain people at work

21  had found out about his arrests and told his supervisor, which resulted in his suspension

22  from work. On May 13, 2020, he messaged a friend on Facebook, "So, you can see why

23  I've been posting weird stuff. I have nothing to lose. I want coworkers to think I'm gonna

24  shoot the place up. I don't fucking care." Slater later told the friend on Facebook, "I have

25  an AR-15 which I bought two weeks ago after a long wait period. I was originally

26  planning on shooting myself with it, but maybe I'll take some of those douche bags in

27  Seattle VA out with me. They totally deserve it. I don't care anymore. I don't give a

28  fuck."

Plea Agreement - 5
*United States v. Slater*, CR21-133 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

c.     In this time period, Slater relocated to New Mexico to stay with his mother. On May 19, 2020, Slater posted on Facebook, "Sometimes in June an angel will gets it wings, It's good and bad but always sad, both joy and pain this brings. Sometimes in June a family must say goodbye, and in this month [Victims 1 and 2] will die." Slater intended for his posts to be a true threat.

d.     On May 21, 2020, the Albuquerque police department went to Slater's residence but did not recover any firearm. On the following day, Slater wrote on Facebook, "hi police if you're out there and monitoring my Facebook. Good luck finding my newly purchased AR-15. You can get a warrant and knock down doors in Albuquerque or Kent but you'll never find it is my special hiding place . . . ." Officers later learned that Slater had purchased parts for an AR-15.

e.     By indictment dated August 20, 2020, Slater was charged in a related case, *United States v. Slater*, CR20-134 RSM, with one count of threats against a federal official in violation of Title 18, United States Code, Section 115(a)(2) and one count of interstate threats in violation of Title 18, United States Code, Section 875(c) (the "Related Case"). On March 9, 2021, Slater pleaded guilty in the Related Case. Chief Judge Ricardo S. Martinez sentenced Slater in the Related Case on June 15, 2021 to time-served for his 12 months in custody and three years of supervised release.

f.     Two days after being sentenced by Judge Martinez, on June 17, 2021, Slater began posting disturbing photographs on his Facebook profile. These posts included a drawing of Victim 3 tied and laying on the train tracks and tombstones with Victims 1 through 3 written on a stone head. In response to this behavior, Judge Martinez added additional conditions to the terms of Slater's supervision in the Related Case, including that Probation would monitor his computer and other electronic devices.

g.     Less than two months later, on July 30, 2021, Slater was arrested because he made specific threats to kill Victims 1 through 3 in text messages that he sent to his mother while intoxicated. Among the numerous threats that Slater sent via text message over a 29-hour period from July 28 to July 29, 2021, are the following:

1           i.      "I want all federal agents or probation officers watching this

2    message . . . . You completely ruined my life. . . . Yes. I am referring to you [Victim 1],

3    [Victim 2], and [Victim 3]. . . . I am going to kill you and your family (and if I didn't

4    already know they existed I will run an internet search and make sure they are dead too)."

5           ii.      "REVENGE . . . . I am going to mutilate all of their pets and

6    put them in a jar of formaldehyde and send it to [Victim 2]'s son on 10th grade in junior

7    high."

8           iii.      "I'm gonna kill those idiots (and their families) at Puget

9    Sound VA for what they did to me."

10          iv.      "I am going to massacre [Victim 2], [Victim 1], and [Victim

11   3]. . . . An AR-15 isn't for hunting animals. It's for hunting humans."

12        The parties agree that the Court may consider additional facts contained in the

13   Presentence Report (subject to standard objections by the parties) and/or that may be

14   presented by the United States or Defendant at the time of sentencing, and that the factual

15   statement contained herein is not intended to limit the facts that the parties may present to

16   the Court at the time of sentencing.

17        9.    **Sentencing Factors**. The parties agree that the following Sentencing

18   Guidelines provisions apply to this case:

19          a.     A base offense level of 12 pursuant to Section 2A6.1(a)(1);

20          b.     A two-level increase under Section 2A6.1(b)(2) because the offense

21   involved more than two threats; and

22          c.     A six-level increase under Section 3A1.2(b) because the victims

23   were government employees, and the offense was motivated by such statuses.

24        The parties agree they are free to present arguments regarding the applicability of

25   all other provisions of the United States Sentencing Guidelines. Defendant understands,

26   however, that at the time of sentencing, the Court is free to reject these stipulated

27   adjustments, and is further free to apply additional downward or upward adjustments in

28   determining Defendant's Sentencing Guidelines range.

Plea Agreement - 7
*United States v. Slater*, CR21-133 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

10.     **Acceptance of Responsibility.** At sentencing, *if* the Court concludes Defendant qualifies for a downward adjustment for acceptance of responsibility pursuant to USSG § 3E1.1(a) and Defendant's offense level is 16 or greater, the United States will make the motion necessary to permit the Court to decrease the total offense level by three (3) levels pursuant to USSG §§ 3E1.1(a) and (b), because Defendant has assisted the United States by timely notifying the United States of Defendant's intention to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

11.     **Agreed Recommendation Regarding Imprisonment**. Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the parties jointly agree to recommend that the appropriate term of imprisonment to be imposed by the Court at the time of sentencing is a term of 30 months. The parties agree to recommend a term of supervised release of three years that will include the following supervised release conditions:

a.     Defendant shall reside with his mother, Nancy Slater, unless the U.S. Probation Office finds another location is appropriate;

b.     Defendant shall consent to the U.S. Probation Office conducting ongoing monitoring of his computer, hardware, software, and any and all electronic devices;

c.     Defendant shall not access any social media sites, including but not limited to Facebook, Instagram, Twitter, or Snapchat without permission of the U.S. Probation Office;

d.     Defendant shall have no direct or indirect contact with the victims by any means without approval of the U.S. Probation Office; and

e.     Defendant shall participate in programs for treatment of mental health and substance abuse as instructed by the U.S. Probation Office.

As for the pending supervised release violations, the government agrees to recommend that the Court impose one day of custody with no term of supervised release to follow.

Plea Agreement - 8
*United States v. Slater*, CR21-133 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The parties are each free to recommend additional terms of supervised release. Defendant understands that this recommendation is not binding on the Court and the Court may reject the recommendation of the parties and may impose any term of imprisonment up to the statutory maximum penalty authorized by law. Defendant further understands that Defendant cannot withdraw a guilty plea simply because of the sentence imposed by the Court. Except as otherwise provided in this Plea Agreement, the parties are free to present arguments regarding any other aspect of sentencing.

12.     **Abandonment of Contraband**. Defendant also agrees that, if any federal law enforcement agency seized any illegal contraband that was in Defendant's direct or indirect control, Defendant consents to the federal administrative disposition, official use, and/or destruction of that contraband.

13.     **Non-Prosecution of Additional Offenses**. As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees not to prosecute Defendant for any additional offenses known to it as of the time of this Plea Agreement based upon evidence in its possession at this time, and that arise out of the conduct giving rise to this investigation and will move to dismiss the remaining counts in the Indictment at the time of sentencing. In this regard, Defendant recognizes the United States has agreed not to prosecute all of the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Plea Agreement. Defendant agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with evidence of all conduct committed by Defendant.

Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119 (1997).

Plea Agreement - 9
*United States v. Slater*, CR21-133 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

14. **Breach, Waiver, and Post-Plea Conduct.** Defendant agrees that, if Defendant breaches this Plea Agreement, the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United States has evidence. Defendant agrees not to oppose any steps taken by the United States to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea Agreement. Defendant also agrees that, if Defendant is in breach of this Plea Agreement, Defendant has waived any objection to the re-institution of any charges that previously were dismissed or any additional charges that had not been prosecuted.

Defendant further understands that if, after the date of this Plea Agreement, Defendant should engage in illegal conduct, or conduct that violates any conditions of release or the conditions of confinement (examples of which include, but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the Pretrial Services Officer, Probation Officer, or Court), the United States is free under this Plea Agreement to file additional charges against Defendant or to seek a sentence that takes such conduct into consideration by requesting the Court to apply additional adjustments or enhancements in its Sentencing Guidelines calculations in order to increase the applicable advisory Guidelines range, and/or by seeking an upward departure or variance from the calculated advisory Guidelines range. Under these circumstances, the United States is free to seek such adjustments, enhancements, departures, and/or variances even if otherwise precluded by the terms of the Plea Agreement.

15. **Waiver of Appellate Rights and Rights to Collateral Attacks.** Defendant acknowledges that, by entering the guilty plea(s) required by this Plea Agreement, Defendant waives all rights to appeal from Defendant's conviction, and any pretrial rulings of the Court, and any rulings of the Court made prior to entry of the judgment of conviction. Defendant further agrees that, provided the Court imposes a custodial sentence that is within or below the Sentencing Guidelines range (or the statutory

Plea Agreement - 10
*United States v. Slater*, CR21-133 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

mandatory minimum, if greater than the Guidelines range) as determined by the Court at the time of sentencing, Defendant waives to the full extent of the law:

a.     Any right conferred by Title 18, United States Code, Section 3742, to challenge, on direct appeal, the sentence imposed by the Court, including any fine, restitution order, probation or supervised release conditions, or forfeiture order (if applicable); and

b.     Any right to bring a collateral attack against the conviction and sentence, including any restitution order imposed, except as it may relate to the effectiveness of legal representation.

This waiver does not preclude Defendant from bringing an appropriate motion pursuant to 28 U.S.C. § 2241, to address the conditions of Defendant's confinement or the decisions of the Bureau of Prisons regarding the execution of Defendant's sentence.

If Defendant breaches this Plea Agreement at any time by appealing or collaterally attacking (except as to effectiveness of legal representation) the conviction or sentence in any way, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea Agreement.

16.     **Voluntariness of Plea**. Defendant agrees that Defendant has entered into this Plea Agreement freely and voluntarily, and that no threats or promises were made to induce Defendant to enter a plea of guilty other than the promises contained in this Plea Agreement or set forth on the record at the change of plea hearing in this matter.

17.     **Statute of Limitations**. In the event this Plea Agreement is not accepted by the Court for any reason, or Defendant breaches any of the terms of this Plea Agreement, the statute of limitations shall be deemed to have been tolled from the date of the Plea Agreement to: (1) thirty (30) days following the date of non-acceptance of the Plea Agreement by the Court; or (2) thirty (30) days following the date on which a breach of the Plea Agreement by Defendant is discovered by the United States Attorney's Office.

Plea Agreement - 11
*United States v. Slater*, CR21-133 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1     18.   **Completeness of Plea Agreement**. The United States and Defendant

2 acknowledge that these terms constitute the entire Plea Agreement between the parties,

3 except as may be set forth on the record at the change of plea hearing in this matter. This

4 Plea Agreement binds only the United States Attorney's Office for the Western District

5 of Washington. It does not bind any other United States Attorney's Office or any other

6 office or agency of the United States, or any state or local prosecutor.

7     Dated this <u>4th</u> day of January, 2022.

8

9                 Jennifer Horwitz for Matthew Slater

10                 MATTHEW RUHMANN SLATER
                Defendant

11

12

13                 JENNIFER HORWITZ

14                 Attorney for Defendant

15

16                 */s/ Thomas M. Woods*

17                 THOMAS M. WOODS
                Assistant United States Attorney

18

19                 */s/ Sok Tea Jiang*

20                 SOK TEA JIANG
                Assistant United States Attorney

21

22

23

24

25

26

27

28

Plea Agreement - 12
*United States v. Slater*, CR21-133 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970